**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of  John L. Pacht, <u>et</u> <u>al.</u>    }
                                    }
                                    }       Docket No. 64-4-03 Vtec
                                    }
                                    }

<u>Decision and Order</u>

Appellants John L. Pacht, Sally Reiss, Chuck Reiss, Nancy LeRoy, Greg LeRoy, Jeffrey Galper, Patricia Whitney, Tom Whitney, Carl Bohlen, Gary Frisch, Susan Mead, Ryan Wuthrich, John Ferrara and Kathy Ferrara appealed from a decision of the Development Review Board (DRB) of the Town of Hinesburg, granting final plat approval of an 8-lot subdivision. The parties agreed at the first day of trial, in June of 2003, that an earlier appeal of the preliminary plat approval, Docket No. 270-12-02 Vtec, had been rendered moot by the proceedings on the final plat approval, and it was entered as disposed as of that date.

Appellants are represented by John L. Pacht, Esq. (one of the Appellants); Appellee-Applicant Samuel Evanson is represented by Robert J. Perry, Esq.; the Town of Hinesburg is represented by Ernest M. Allen, III, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who later also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence[1], the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellee-Applicant Sam Evanson proposes an 8-lot subdivision on a 31.9-acre parcel of land now owned by Goodrich, in the Rural Residential 1 zoning district in the Town of Hinesburg, in which the minimum lot size is three acres. In connection with the subdivision, Appellee-Applicant proposes to install a detention pond for stormwater runoff on Lot 3 near the road, west of the house site on Lot 3. The pond will not be suitable for recreation, will be screened from the road by additional plantings[2], and will drain through a swale and sheet runoff into the wetland located on Lots 3 and 1 to the west of the pond.

The property is bounded on the west by Lavigne Hill Road and on the south by the upper segment of Buck Hill Road West. It is bounded on the north by the > High Rock= development already developed by Appellee-Applicant. Appellee-Applicant proposes that the houses to be built in the subdivision would contain approximately 3,000 square feet on two floors, and not higher than 35 feet in height, although at trial he stated his willingness to accept a height limit of approximately 28 feet in height. He proposes either to build them under his direction or to have architectural control of them, similar to an arrangement he had in the High Rock subdivision, as reflected in paragraph 1(E) of the A Declaration of Covenants, Conditions and Restrictions@ in evidence as Appellants= Exhibit 18.

Buck Hill Road appears on the area map provided for the site visit in two traveled segments: Buck Hill Road West and Buck Hill Road East. Through traffic between them is blocked. The only portion of Buck Hill Road related to the present appeal is Buck Hill Road West, which is reached by traveling uphill from Route 116. For the purposes of this decision, Buck Hill Road West is treated as a dead-end road, terminating in private driveways just above the proposed subdivision.

Lavigne Hill Road is a dead-end road north of its intersection with Buck Hill Road West, and carries only local traffic. It also has access directly to Route 116, the area= s major through

highway, although that access is inferior to Buck Hill Road West, so that Lavigne Hill Road residents also use Buck Hill Road West for access to and from Route 116. Lavigne Hill Road has a fairly steep segment traveling up to the Lavigne Hill Road/Buck Hill Road West intersection from Route 116.

Buck Hill Road West is a dead-end road east of its intersection with Lavigne Hill Road, and carries only local traffic. For the purposes of this appeal, the segment of it east of the intersection with Lavigne Hill Road will be referred to as A Upper@ Buck Hill Road West to distinguish it from the segment from Route 116 to that intersection, which will be referred to as A Lower@ Buck Hill Road West. Lower Buck Hill Road West has access directly to Route 116, the area= s major through highway. It has a fairly steep segment traveling up to the Lavigne Hill Road/Buck Hill Road West intersection from Route 116. Appellants live along both upper and lower Buck Hill Road West in the immediate neighborhood.

Lower Buck Hill Road West is an existing gravel town road with an approximately 22' to 24'-wide traveled way, and associated drainage ditches. A portion of the road adjoins an embankment dropping off steeply to the south. The road has been subject to erosion due to deterioration of the drainage ditch system. It has no posted speed limit. The Town= s traffic ordinance sets a 30 mph speed limit for this roadway, but the Town= s roadway design standards call for a 25 mph design speed for this type of roadway. Observed speeds of drivers actually using the road during a speed study conducted for the Town showed that the roadway is often used at considerably higher speeds in the 35 mph range. A study was conducted in 2002 for the Town, in connection with recommendations to address complaints regarding the safety of the roadway and the tendency for vehicles to slide off the roadway under snow and ice conditions. Local users of the roadway report that people drive too fast for conditions; that because the road has eroded, people drive in the center of the roadway, especially under snow and ice conditions and coming up hill; that vehicles slide off the roadway under snow and ice conditions; and that people drive faster eastbound (uphill) in the winter to try to make it up the hill in snow and ice conditions. When school buses cannot make it up the hill, schoolchildren must walk up the road which is a safety hazard for them.

Lower Buck Hill Road West has horizontal and vertical curves that meet the Town= s roadway design standards. However, the horizontal curves do not meet national standards (that is, the curves are too tight) for travel under snow conditions or at higher speeds. The vertical curves (both the sag and the crest vertical curves) on the roadway provide sufficient sight distances for traffic at the 25 mph speed limit, but not at higher speeds. The 2002 traffic study made recommendations for improvements to Lower Buck Hill Road West, including repairing the erosion problem and preventing future erosion, posting speed limit and warning signs, enforcing the speed limit, installing a guard rail along a certain portion of the road adjoining a steep embankment, providing increased winter maintenance, and installing roadside markers to delineate the edge of the roadway during snow conditions. It did not recommend widening the road or providing a cambered roadway in the curves, to avoid increasing the likelihood of speeding.

The existing traffic on Lower Buck Hill Road West is relatively low, as characterized by the 2002 study: it carries a maximum of 37 vehicles per hour in the morning peak hour, and a maximum of 34 vehicles per hour in the evening peak hour. The proposed development is predicted to add 12 vehicles to the morning peak hour and 10 vehicles to the evening peak hour. This addition of one more vehicle every five or six minutes will be A insignificant in terms of the operation of the roadway,@ again as characterized by the 2002 study done for the Town. Thus while Lower Buck Hill Road needs improvements for safety, especially in winter conditions, these improvements are recommended regardless of whether the proposed subdivision is or is not approved. The improvements are not made necessary by the proposed subdivision, and the problems will not be worsened by the proposed subdivision.

Upper Buck Hill Road West is a town road with a 50-foot-wide right-of-way. At present the traveled way is only approximately 12 to 15 feet wide (18 feet wide in places) and is partially shaded by a canopy provided by roadside trees, which adds to the rural and secluded character of the immediate neighborhood. It has the character of a country lane rather than of a suburban subdivision roadway. The road curves sharply around a ledge outcropping close to its outlet onto the Lavigne Hill Road intersection, but is otherwise fairly straight, and rises 100 feet in elevation along the approximately 1500 feet of frontage of the project parcel. Upper Buck Hill Road is subject to erosion because the area is generally wet and water flowing downhill from above the subject property through a wetland and watercourse to the north of the roadway sometimes flows into and down the road under storm runoff conditions. As the roadside ditching is inadequate to conduct the runoff away from the road, runoff during heavy rainfall events runs down the roadway and erodes it.

In connection with the proposed subdivision and in cooperation with the Town=s[3] plans to improve Upper Buck Hill Road West, Appellee-Applicant proposes to widen the traveled way of Upper Buck Hill Road West to 18 feet in width, to remove the ledge outcropping and increase the radius of the curve, and to improve the drainage of Upper Buck Hill Road from the above the subdivision access road (Evanson Road) down to Lavigne Hill Road by conducting drainage to the subdivision= s detention pond under Evanson Road and by improving the roadside ditching. Appellee-Applicant proposes to preserve the tree canopy along Upper Buck Hill Road as much as possible, to save the specific trees marked in conjunction with the Town and the neighbors, and to widen the traveled way of the roadway and its associated ditches only the minimum amount necessary to meet the town roadway requirements[4]. Appellee-Applicant proposes to plant additional trees along the roadway to screen the detention pond, as shown on Appellee-Applicant= s Exhibit 17 as modified by Appellee-Applicant= s representations in Appellant= s Exhibit 9 and at trial.

The adjoining A High Rock@ subdivision, was created from a high meadow to the north of the property now proposed for subdivision. It has access to Lavigne Hill Road above (to the north of) its intersection with Buck Hill Road West, and contains six single family lots averaging about six acres in size. Four of these lots range from 32 to 42 acres in size, and two are larger, in the ten-acre size range. The three High Rock lots immediately adjoining the proposed subdivision are 3.82 acres, 4.12 acres, and 10.44 acres in size, respectively. Appellee-Applicant lives in that subdivision. Both the High Rock subdivision lots and the other property along Lavigne Hill Road in the immediate area have the characteristics of open meadow land with wooded land behind them in the distance.

On lower Buck Hill Road West below (to the west of) and approaching its intersection with Lavigne Hill Road are four single-family lots of 4.81 acres, 5.3 acres, 5.92 acres and 5.94 acres in size; these four lots share an additional 3-acre parcel of common land.

The eight[5] existing lots along upper Buck Hill Road West average just over 6 acres in size. They range in size from 32 acres and 43 acres for the two lots subdivided from the O= Neill lot (Lot D on Appellants= Exhibit 2), to the two most easterly lots, one on each side of the road, which are each approximately 10 acres in size (by scale from Appellant= s Exhibit 2). All of these lots remain largely wooded, with separate driveways to relatively secluded house sites located approximately 100 feet or more from the road. The residents along upper Buck Hill Road West value the tree canopy over the road and the forested, relatively secluded nature of the neighborhood, and especially value the fact that it has the characteristics of a country road in a wooded area rather than the more landscaped look of a suburban development. In this respect they have benefitted from the fact that the property proposed for the present subdivision has remained undeveloped until now.

The property proposed for the subdivision contains meadows fronting on Lavigne Hill Road, and is otherwise largely wooded, becoming steep in its northeast corner, approaching cliffs on

neighboring property from which there are views overlooking Lake Champlain. Class III wetlands are found in several areas of the property, both in the meadows and in the woodland. A small stream runs through the property from the northeast to the southwest, passing through existing culverts under Lavigne Hill Road and Buck Hill Road West close to the intersection, and continuing downhill to the La Platte river valley along Route 116. Soils suitable for the construction of septic systems are found on the property, but not in all areas of the property.

The forested area is a northern hardwood forest in different stages of succession. The most mature growth is to the north and the east on the property, so that the most mature growth is found on Lots 5 and 6, with some on Lots 4 and 7 as well. The High Rock cliffs to the north of and above this property are a denning area for bobcat, and support populations of hawks and ravens. Grouse, various song bird species, barred owls, as well as the tracks of bobcat and fisher, have been observed in the forested area on the property. Any of these species using the stream corridor already successfully traverse Lavigne Hill Road to travel down towards the river. Sufficient forested habitat remains on the property to allow this wildlife to continue to use and traverse the property. The addition of the stream crossing for the driveway for Lot 5 should not impede this use of the stream corridor, but it should be designed so that any amphibious or aquatic species can pass through it.

Appellee-Applicant proposes to divide the 31.9-acre property into eight lots: two lots with access by a common driveway onto Lavigne Hill Road, and six lots with access by a private roadway (A Evanson Road@ ) onto Upper Buck Hill Road West. Appellee-Applicant also proposes to provide a 30-foot-wide pedestrian easement along the easterly border of the property and angling towards the northwest across the northeasterly corner of the property, to connect with an informal trail on the Pierson property in the High Rocks subdivision. Within the easement the Town may establish and maintain a meandering pedestrian pathway no greater than five feet in width to replace the informal pedestrian pathway or pathways now crossing the property from south to north and used by local residents for walking.

The two Lavigne Hill Road lots are proposed to be 6.35 and 5.53 acres in size, respectively, with their building envelopes set back so that the house sites lie well away from the road across the meadows and are tucked back against the tree line. The two house sites lie on either side of a wooded knoll. This location reduces the visibility of the houses from the road and from each other, and preserves the open meadows, consistent with the character of the neighborhood along Lavigne Hill Road. Almost no clearing will be necessary for the construction of houses on these two sites. The driveways and house sites avoid existing wetlands, except for a minor (764 square foot) area of wetland affected by the house site for Lot 2, which is outweighed by advantages of placing that house site in its proposed location.

The six lots proposed with access onto Upper Buck Hill Road West range from three to three-and-a-half acres in size; they are 3.04 acres, 3.05 acres, 3.11 acres, 3.16 acres, 3.43 acres and 3.49 acres in size respectively. They are laid out around a curved private roadway to be established within a 50-foot-wide right-of-way within a heavily wooded area of the property. The building envelopes for these six lots are laid out to avoid existing wetlands and to minimize the amount of clearing necessary for the house construction. They are laid out so that they will come no closer than 150 feet to the neighboring property to the east. The building envelopes for these six lots were reduced over the course of the project= s development from those shown on the original plans. The current proposed building envelopes[7] are those shown on Appellee-Applicant= s Exhibit 9 and the percentage of that building envelope that is already clear of trees or is proposed to be cleared is as described in the March 18, 2003 memorandum in evidence as Appellants= Exhibit 9. Appellee-Applicant incorporated the conclusions and conditions of the DRB= s April 1, 2003 decision as part of his application at trial, except that he agreed to Appellants= request to eliminate from Condition 5 of that decision consideration of solar exposure needs as a reason to allow clearing outside the building envelopes. The Town did not oppose that deletion.

The proposed Evanson Road is proposed to be laid out within a 50-foot-wide right-of-way, but Appellee proposes that the traveled way of the road will be no more than 18 feet in width with up to 5 feet of roadside ditching and utility access[8], to preserve the tree canopy as much as possible, and to conduct the traveled way around features, such as large trees, that are to be preserved. When completed, Evanson Road will resemble Upper Buck Hill Road in width, general appearance, and amount of clearing. All utilities for the Evanson Road lots will be installed underground, including the piping necessary to conduct the sewage from Lots 3, 4, and 5 to the disposal fields on Lots 7 and 8. Appellee-Applicant proposes to establish the character of Evanson Road as that of a country lane rather than of a suburban subdivision roadway, consistent with the character of Upper Buck Hill Road West.

Question 1 - Subdivision Regulations ' 6.1.5 - Compatibility with Surroundings

Section 6.1.5 of the Subdivision Regulations requires an evaluation of whether the proposed density, building sizes, pattern of development, and configuration of lots is compatible with the surrounding properties, the natural environment, and the built environment. Appellants argue that the size, density, pattern of development and configuration of the subdivision, and in particular of these six lots and their access road, is incompatible with the neighborhood. They define the > neighborhood= for purposes of this comparison as only the seven (now eight) Upper Buck Hill Road lots. However, ' 6.1.5 requires a comparison with > surrounding properties,= not just the ones on Upper Buck Hill Road. The density and lot sizes are within the range of those found in the surrounding properties on Upper Buck Hill Road, in the adjacent High Rock subdivision, and on Buck Hill Road just across Lavigne Hill Road. The configuration of lots and pattern of development is also compatible with the surrounding properties. The Lavigne Hill Road lots are set back against the woods with open meadows between the house sites and the road. The Upper Buck Hill Road lots will have access via Evanson Road which will have the same > country lane= appearance as Upper Buck Hill Road itself. Further, because the lots are wooded and Evanson Road is curved, the more distant houses will not be visible from the road, consistent with the character of the existing houses on Upper Buck Hill Road.

Questions 1 and 5 - Subdivision Regulations ' ' 7.10.6 and 7.10.7 - Lot Layout: Preservation of Natural and Significant Features; Site Features; and ' ' 6.1.2 and 6.1.3 - Natural Features Protection and Cultural Features Protection

The lot layout and design of this project give due regard to the protection and preservation of existing natural features and scenic resources. The proposal is designed to avoid affecting the wetlands, to make efficient use of the soils suitable for septic disposal on the site, to protect as many of the larger trees on site as possible, and to minimize the area of clearing within the forest. The Lavigne Hill Road lots preserve the open meadow views onto the property. Within the wooded area of the Upper Buck Hill Road lots, no scenic views are affected either of or from the property. The design of Evanson Road and the building envelopes will minimize the amount of clearing within the forest to create the roadway and the house sites and to install the infrastructure, so that the appearance of the forest itself from the road will be reasonably protected as an existing natural feature. In addition, the denser forest to the north and east of Lots 6, 7, and 8 will remain largely undisturbed.

Because of the curve in Evanson Road and the retention of forested wetland on Lot 8, the houses on Lots 5, 6, and 7 should not be visible or be minimally visible from the road, and the houses on Lots 3, 4 and 8 should be at least partially screened from the road. The detention pond will not be a recreational or landscape feature, and will provide water by a natural sheet flow to maintain the character of the wetlands on Lot 2 to its west.

Questions 2 and 4 - Town Plan ' 4.7.2 - Town Roads (incorporated by Subdivision Regulations ' 6.1.13) and Subdivision Regulations ' 6.1.6 - Transportation

The proposal contains adequate provision for transportation, including vehicular and pedestrian traffic, in terms of safety, convenience, access, and attractiveness. The design of Evanson Road and the proposed improvements to Upper Buck Hill Road will increase its safety, as the improved drainage should reduce its erosion problem and should reduce winter problems with icy conditions. The addition of ten to twelve trips on Lower Buck Hill Road in the peak hour will be local drivers who will become as familiar with the problems of local conditions as are the existing users of Lower Buck Hill Road. The increase in traffic using Lower Buck Hill Road will be insignificant in terms of the existing problems with the geometry and signage of Lower Buck Hill Road; that is, the recommended improvements are not made necessary by the proposed subdivision, and the problems will not be worsened by the proposed subdivision. Those problems should be remedied regardless of the addition of one vehicle every five or six minutes in the peak hours due to this project.

Question 3 - A Does the Evanson final plat fail to consider preexisting necessary recreational paths used by residents in the neighborhood. In this regard, is the proposed project visually A shocking@ in violation of criteria [sic] 8 of the Hinesburg town plan.@

The proposal considers the existing recreational path through the property used by residents in the neighborhood, and provides the Town with an easement over the property for that recreational use, even though neither the Town nor the residents had any formal right to use the existing path. While the easement takes a route somewhat farther east on the property, it links up across the northeastern corner of the property with the existing informal path on the Pierson property in the High Rocks subdivision. It actually provides the Town and its citizens a greater right to use a path over this piece of private property than they had enjoyed before.

With regard to the second sentence of Question 3 of the Statement of Questions, the Court was unable to find a criterion 8 or any mention of a standard test of whether a proposal is A visually shocking@ in the Town Plan or in the Subdivision Regulations. (Compliance with the Town Plan is incorporated into the Subdivision Regulations by ' 6.1.13.) In any event, as the entire 50-foot-wide right-of-way for Evanson Road will not be cleared into the heart of the forest, we find nothing about the design of the proposed subdivision that will be A visually shocking.@

Based on the foregoing, it is hereby ORDERED and ADJUDGED that final plat approval is hereby GRANTED to Appellee-Applicant= s 8-lot subdivision, with the requirements and conditions contained in the order section at pages 4 and 5 of the DRB= s decision in evidence as Appellee-Applicant= s Exhibit 16, except as altered by the following amended conditions:

Prior to the construction of any site improvements for Lot 5, infrastructure for Lot 5, or the driveway for Lot 5, Appellee-Applicant shall consult with an expert in the wildlife-related design of stream crossings to provide specifications for the detailed design of the stream crossing for the driveway to Lot 5 that protects the use of the stream corridor by amphibious and aquatic species.

Condition 5 of the DRB decision is hereby amended to eliminate A solar exposure needs@ as a reason for unlimited clearing outside the building envelopes.

Condition 13 of the DRB decision is hereby amended to add the following requirement: Appellee-Applicant shall provide a full set of the plans for the project, consistent with and showing all representations made by Appellee-Applicant in this appeal, and showing all changes made necessary by the conditions and requirements of this and the DRB approval. In particular, Sheet 6 of the plans shall be amended to reflect the tree planting schedule in the March 18, 2003 memorandum (Appellants= Exhibit 9); the appropriate sheets of the plans shall be amended to show the 30[6]-foot-wide pedestrian easement, with a note that the pedestrian path within it shall meander and shall be established at a width not to exceed five feet; the appropriate sheets of the plans shall be amended to show the proposed tree lines, clearing limits and building envelopes as

shown on Appellee-Applicants= Exhibit 9 in evidence; and the appropriate sheets of the plans shall be amended or annotated to reflect the proposed 18-foot width of the traveled way of Evanson Road and Upper Buck Hill Road, with the proposed 4- to 6-wide additional cleared width for the necessary roadside ditching and infrastructure installation. In addition, Appellee-Applicant shall provide for filing as part of the approved plans the following documents referred to in the DRB decision or referred to at trial:

(1) the forest management plan (referred to in ' ' 6(*l*) and 6(*o*) on page 2, in ' 6 of the conclusions on page 4, and in ' 5 of the conditions on page 5 of the DRB decision in evidence as Appellee-Applicant= s Exhibit 16); and

(2) the amended A Evanson Development Lot Easements@ and any other covenants or deed language required by the DRB decision (see, e.g., ' ' 2, 3, 4, 5 and 7 of the conditions on pages 4-5 of the DRB decision in evidence as Appellee-Applicant= s Exhibit 16), including specifically any amendments to paragraphs 1(E), 2, and 5 of the A Declaration of Covenants, Conditions and Restrictions@ (in evidence as Appellants= Exhibit 18), to reflect the architectural control covenants, the 28-foot height limitation, and the clearing limitations and building envelopes.

Dated at Barre, Vermont, this 1st day of December, 2003.

_____

Merideth Wright
Environmental Judge

---

**Footnotes**

[1.] At the hearings, both parties had prepared exhibits using a numbering system. Appellants' exhibits have blue labels and Appellee-Applicant's exhibits have white labels.

[2.] The proposed plan to retain existing trees is shown on Appellee-Applicant's Exhibit 17; however, the planting plan for new trees is not accurate on that exhibit. Rather, it is described on a March 18, 2003 memorandum from Appellee-Applicant in evidence as Appellants' Exhibit 9.

[3.] This work would have been necessary in any event due to the creation of an additional lot by the O'Neill subdivision (see footnote 5 below).

[4.] Appellee-Applicant has agreed to that requirement as part of the application before the Court. Any approval will require Appellee-Applicant to file a revised site plan containing the project as approved.

[5.] Appellants presented evidence as to seven existing lots, shown as Lots A through G on their Exhibit 2; however, Lot D as shown on that map has been subdivided into two lots of 3.46 acres and 4.26 acres.

[6.] This easement is shown as 20 feet wide on the site plan in evidence as Appellee-Applicant's Exhibit 9, but the DRB required it to be 30 feet wide, and Appellee-Applicant has

agreed to that requirement as part of the application before the Court. Any approval will require Appellee-Applicant to file a revised site plan accurately representing the project as approved.

7. Any approval of the current plans with the current proposed building envelopes will require Appellee-Applicant to file a revised site plan accurately representing the project as approved, and will require the building envelopes and clearing restrictions to be stated in the deeds (as required by Condition 7 of the DRB's decision).

8. Appellee-Applicant has agreed to that requirement as part of the application before the Court. Any approval will require Appellee-Applicant to file a revised site plan accurately representing the project as approved.